UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ADAM DIAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:04-CV-446 PS |
| | ) | |
| DAN MCBRIDE, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

*Pro se* Petitioner, Adam Diaz, an inmate with the Indiana Department of Correction, was found guilty of committing battery upon another person using a weapon or inflicting serious injury. After exhausting his administrative remedies, Diaz petitioned for relief under 28 U.S.C. § 2254. The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its Response, the Attorney General of Indiana has submitted the administrative record including documents designated A through I, which set out the underlying procedures in the conduct adjustment board (CAB) proceeding.[1] Diaz filed a traverse.

**I. RELEVANT FACTS**

On April 19, 2004, while Lt. Biddle and Officer Marley were conducting a shakedown of Diaz's cell, Diaz asked them and Case Manager Robertson for a bed move and the officers explained the process to Diaz. (Exhibit A.) Later, the officers were called back to Diaz's cell where he was holding the door open. (*Id.*) When Lt. Biddle tried to shut the door, Diaz began

---

[1] The CAB is the internal Department of Correction administrative body that adjudicates violations of prison rules and regulations.

swinging his fists and trying to strike him and Officer Marley.  (*Id.*)  The officers took Diaz to the ground, and during their attempt to subdue him, Diaz bit Lt. Biddle on the thumb.  (*Id.*)  On April 20, 2004, Diaz was notified of the charges against him.  (Exhibit B.)  At the screening, Diaz requested Lt. Simpson as his lay advocate, but did not request any witnesses.  (*Id.*)  He requested a review of the videotape showing the incident.  (*Id.*)  Officer Marley and Case Manager Robertson provided statements, but Lt. Simpson declined to be Diaz's lay advocate.  (*Id.*)

The CAB hearing was held on April 27, 2004.  (Exhibit C.)  At the hearing, Diaz decided to represent himself and testified that he didn't recall swinging at or biting the officers.  (*Id.*)  According to Diaz, he was just desperate to be moved, and he merely yelled at Lt. Biddle that "you WILL move me."  (*Id.*)  Diaz also testified that the officer was "bald and white[,]" and Diaz thought he was an Aryan.  (*Id.*)  Therefore, according to Diaz, because he is a Latino, he thought Lt. Biddle posed a danger to him.  (*Id.*)  The CAB didn't buy it and found Diaz guilty of the charge.  (*Id.*)  Diaz's finding of guilt was based on staff reports, Diaz's statement, evidence from witnesses, and videotapes and a photograph.  (*Id.*)  The sanction imposed was a 720 day earned credit time loss, one year in segregation, and a demotion in credit class from I to III.  (*Id.*)  The finding of guilt and the sanction were upheld by the facility superintendent and final reviewing authority.  (Exhibits F and G.)

## II. STANDARD OF REVIEW

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision.  Due

process requires that Diaz be given: "(1) advance written notice of the charges against [him] at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in [his] defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974)).  For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker." *Id.*

The decision must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  The so-called "some evidence" standard has been repeatedly applied in this circuit.  *See Webb v. Anderson*, 224 F.3d 649, 650-51 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717, 719-20 (7th Cir. 1996).  "This is a lenient standard, requiring no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 652 (citations omitted).  Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* (citing *Hill*, 472 U.S. at 457).  "'[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Id.* (emphasis and alteration in original) (citing *Hill*, 472 U.S. at 455–56).

### III. DISCUSSION

Initially, Diaz's Petition challenged three separate CAB hearings.  Two of the three were dismissed from this case, leaving only his challenge to hearing MCF04-04-286.  Regarding that

hearing only, Diaz claims that the State violated his constitutional rights in many ways. Diaz's first, third, sixth, eighth, and seventeenth claims allege that he was denied the right to present evidence. Claim two alleges that the conduct report was too vague to adequately inform him of the charge. Claims four and five allege he was denied a lay advocate. Claims seven, ten and thirteen allege his good time and credit class were inappropriately deprived. Claim nine alleges that the conduct report was improperly written or printed. Claim fourteen alleges he was subjected to double jeopardy. Claim fifteen alleges the CAB's written findings were insufficient. Claim eighteen alleges his rights were violated because a change in prison policy prevented him from having all of his earned credit time restored. Claim nineteen alleges there was insufficient evidence to find him guilty because Lt. Biddle lied. Claim twenty alleges that the denial of his appeals were racially motivated and a form of retaliation.[2]

### A. Denial of Evidence

Diaz's first, third and sixth claims allege that the Adult Disciplinary Procedures (ADP) were violated. To the extent that he is challenging those state-imposed guidelines, his claims fail. The claims that the CAB didn't review his psychiatric history, that no physician report was provided, and that he was not given copies of certain evidence in violation of the ADP are not claims against the federal Constitution or laws. Relief in this action is only available from violations of the federal Constitution or laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State law questions under Indiana Department of Correction policy do not state a claim for federal habeas relief and must be denied. *See Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997). Diaz's claims that his denial of various forms of evidence violated the ADP

---

[2] Claims 11, 12 and 16 in the Petition refer to CAB hearings not at issue in this case.

fail to state a claim.

To the extent that he is making due process challenges in his first, third, sixth, eighth and seventeenth claims, those also fail. In *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), the court stated that the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), "requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." There are two functions of *Brady* in the prison disciplinary context. The first is to ensure that the disciplinary board considers all relevant evidence. *Id.* The second is to enable the prisoner to present his best defense. *Id.*

In this case, Diaz alleges that all the psychologist and psychiatrist evaluations to be reviewed were not attached as mandated by the ADP (claim 1), that there was no physician report provided to him which established a "serious injury" according to the ADP (claim 3), that he was not given copies of evidence involving confidential information (claim 6), that the CAB declined to produce medical evidence that Lt. Biddle was actually bitten (claim 8), and that he was found guilty due to the CAB "suppressing material evidence that exonerate the Petitioner" (claim 17).

The Report of Conduct (Exhibit A) clearly describes the incident for which Diaz was charged. Diaz must have requested production of the exculpatory evidence before or during the hearing. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). The Notice of Disciplinary Hearing (Exhibit B) indicates that the only evidence requested by Diaz before the CAB hearing was the videotape of the incident. The attachment to the Report of Disciplinary Hearing (Exhibit C) is a summary of the evidence found on the videotapes that were reviewed by all three members of the CAB. None of the evidence Diaz alleges he was denied was requested on the

5

Notice of Disciplinary Hearing form, which took place before the hearing.  (Exhibit B.)

But Diaz does assert that he requested at the hearing evidence he says he was denied.  In his Petition, Diaz states that he requested evidence relating to his psychologist and psychiatrist evaluations (claim 1).  (Petition at 3.)  Diaz also appears to claim that he requested Lt. Biddle's physician report (claim 3), certain confidential documents (claim 6), and medical evidence (claim 8), along with a catch-all, summary claim alleging that he requested "material evidence that exonerate the Petitioner" (claim 17) at the hearing, all of which the CAB declined to review.

Regarding claim one, Diaz asserts that evidence of his mental state, through psychologist and psychiatric evaluations, should have been taken into account as a defense or as a mitigating circumstance.  (Pet. at 3, 10.)  The prison records, however, nowhere reflect that he made such a request at either his screening or hearing.  Absent a showing in the record that Diaz requested the evidence in a timely fashion, we must conclude that the CAB's failure to consider this evidence did not violate due process.  *See Piggie*, 277 F.3d at 925.

Regarding claims three and eight, Diaz asserts that there is no evidence, either through physician reports or other medical evidence, showing that Diaz injured Lt. Biddle.  (Pet. at 3, 6.)  But as previously stated, this Court applies a "lenient standard" when reviewing the sufficiency of the evidence supporting a prison disciplinary decision.  Here, the Report of Conduct completed by Lt. Biddle  (Exhibit A), along with the witness statements (Exhibit B) and summary of the videotape (Exhibit C), is sufficient to meet the "some evidence" standard.  *See Webb*, 224 F.3d at 650-51.  *See also McPherson*, 188 F.3d at 786 (finding that one disciplinary report was sufficient to sustain the CAB's decision of guilty).  Claims three and eight are therefore without merit.

Regarding claim six, Diaz asserts that he was not provided with copies or summaries of confidential documents regarding certain officials' interviews with Internal Affairs, and that such documents were not reviewed by the CAB. (Pet. at 5.) Again, as stated above, these documents are not necessary to meet the "some evidence" standard. *See Webb*, 224 F.3d at 650-51. Claim six therefore must be dismissed.[3]

## B. Conduct Report Vagueness

Diaz alleges in claim two that the conduct report was so vague that he was not able to comprehend which paragraph had been violated, resulting in his not knowing what type of evidence was needed. Diaz had a right to advance written notice of the charges against him at least twenty-four hours before the hearing. *Henderson*, 13 F.3d at 1077. The Report of Conduct states which rule was violated, both by code number and offense. (Exhibit A.) The report also describes the events that led to the battery. The physical evidence and additional witnesses are also listed at the bottom of the report. It is difficult to conceive how this is not enough information for Diaz to be put on notice. Diaz's due process rights were not violated because he was given enough information to prepare and present a defense against the charges.

## C. Denial of a Lay Advocate

Diaz alleges in claims four and five that he was denied a lay advocate. To the extent that he is challenging the state-imposed guidelines, his claims fail. The claims that the CAB didn't appoint him a lay advocate in violation of the ADP are not claims against the federal Constitution or laws. As mentioned above, relief in this action is only available from violations

---

[3] As stated, claim 17 is a catch-all, summary claim that does not state any new allegations. (Pet. at 10.) Claim 17, as it relates to the CAB hearing at issue in this case, is therefore dismissed.

of the federal Constitution or laws.  *See Estelle*, 502 U.S. at 67-68.  State law questions under Indiana Department of Correction policy do not state a claim for federal habeas relief.  *See Hester*, 966 F. Supp. at 774-75.  Additionally, the Report of Disciplinary Hearing indicates that Diaz decided to represent himself after Lt. Simpson refused to be his lay advocate.  (Exhibit C.)  His claim that he was denied a lay advocate is therefore without merit.

      Diaz alleges for the first time that he was denied an impartial decision maker and that he was denied a Spanish translator in his traverse.  Diaz procedurally defaulted these claims by failing to raise them in the course of the administrative appeals to the facility superintendent and final reviewing authority.  Diaz does not attempt to excuse the default.  It is clear under *Markham v. Clark,* 978 F.2d 993, 995 (7th Cir. 1992), that as a prerequisite to seeking relief under § 2254, available state remedies must be exhausted.  In *Markham*, the Seventh Circuit held that an Indiana state prisoner who failed to exhaust his state administrative remedies for prison disciplinary sanctions "forfeit[s] his state remedies" and is thus also "barred from obtaining relief from the federal court."  *Id.*  Because Diaz did not raise the issue to the facility superintendent or the final reviewing authority, these claims are barred from federal review.

### D.  Calculations Regarding Loss of Earned Credit Time

      Diaz alleges in his seventh, tenth and thirteenth claims that his earned credit time was improperly calculated.  Diaz was charged with three different offenses on the same day, MCF04-04-286 (this case), MCF04-04-287 and MCF04-04-288.  Prior to these hearings Diaz was in Credit Class I.  In this case, as his disciplinary sanction, he was demoted to Credit Class III and deprived of 720 days earned credit time.  He argues that while in credit class III no credit time is earned, so he should not have been deprived of any credit time while in that credit class.  He also

argues that because he was in Credit Class I when he was written up, he should only be deprived half of the 720 days he was sanctioned.

Evidently, Diaz is under the mistaken assumption that once he is placed in credit class III that his previously earned good time credits are safe from revocation. But that is not so. Earned credit time can be revoked while an offender is in credit class III so long as there is earned credit time to take. In other words, the credit class is irrelevant to whether credit time can be revoked.

As support for this, Respondent submits the declaration of Randy Short, the Indiana Department of Correction Supervisor of Offender Placement. Respondent submitted Short's declaration in Diaz's companion case, 2:05-CV-34 PS, Exhibit H,[4] to establish that Diaz's sentences were appropriately executed. Mr. Short avers that under Indiana good time credit rules, deprivation of earned credit time can occur while the offender is in any credit class. (Short Decl. ¶ 8.) Thus, Diaz was not inappropriately deprived of half of 720 days earned credit time simply because he was in Credit Class I when charged. This claim is therefore without merit.

### E. Timeliness of Conduct Reports

Diaz's ninth claims alleges that the conduct report was "printed in the IDOC computer by W. Hiller Correctional Counselor and Amanda Robertson 4 days before the conducts [sic] reports were actually written up 4 days later, subsequently [sic]." (Pet. at 7.) Diaz does not allege how this violated his rights, nor did he raise this issue on appeal to the facility superintendent or final reviewing authority. Diaz does not attempt to excuse the default. As

---

[4] Respondent filed the Short Declaration in case number 2:05-CV-34 as Exhibit H – which included the entire Response to Order to Show Cause filed in this case number, 2:04-CV-446. However, Respondent failed to file the Declaration in this case's (2:04-CV-446) docket. (*See* Doc. 18 (including only the exhibits to Short's Declaration without the actual Declaration). Be that as it may, this Court has reviewed the Declaration at issue in case number 2:05-CV-34, Respondent's Brief [Doc. 7], Exhibit H.

stated above in the section pertaining to the denial of a lay advocate, *Markham v. Clark,* 978 F.2d 993, 995 (7th Cir. 1992) holds that as a prerequisite to seeking relief under § 2254, available state remedies must be exhausted.  Because Diaz did not raise this issue to the facility superintendent or the final reviewing authority, this claim is barred from federal review.

## F.  Double Jeopardy

Diaz alleges in claim fourteen that his rights were violated because he was charged with battery in a court of law in addition to the prison disciplinary charges.  Diaz seems to argue that double jeopardy precludes him from being found guilty by the CAB, or from being charged in state court.  He is incorrect.  In *Meeks*, 81 F.3d at 722, the court stated, "[o]ur court and numerous others have held that a prison disciplinary proceeding is no bar to a subsequent criminal prosecution for the same offense."  Diaz's double jeopardy claim is therefore without merit.

## G.  Sufficiency of CAB Written Findings

Diaz alleges in claim fifteen that the CAB's written summary of the videotaped evidence is insufficient as the CAB reviewed a second videotape and a photograph that have not been described or provided to Diaz.  It is true that the CAB is obligated to provide a written statement of the evidence relied on and the reasons for the disciplinary action.  *Henderson*, 13 F.3d at 1077 (citing *Hill*, 472 U.S. at 454 and *Wolff*, 418 U.S. 564, 566).  The Summary of Evidence, signed by all three CAB members (Exhibit C), reflects that the evidence viewed includes "videotapes," describes two types of video (live and slow-motion), and also appears to describe footage on two tapes.  Therefore, the summary of the two videotapes provided by the CAB adequately meets the standard laid out in *Henderson*.

Diaz's claim regarding the photograph is also without merit. As stated previously, the "some evidence" standard has been adequately satisfied with the Report of Conduct completed by Lt. Biddle (Exhibit A), along with the witness statements (Exhibit B) and summary of the videotape (Exhibit C). *See Webb*, 224 F.3d at 650-51. The photograph of the injury, (*see* Pet. at 9), is simply superfluous evidence to what CAB had already reviewed. Therefore, the CAB did not commit any error by failing to attach the photograph, or a description, to the Report of Disciplinary Hearing. (Exhibit C.)

### H.  Ex Post Facto Clause Violation

Diaz alleges in claim eighteen that his rights were violated because the previous policy allowed full restoration of lost earned credit time for any conduct report. However, after the policy was amended, good time lost for certain violations cannot be fully restored. He alleges the ADP is unconstitutional. In *Gilbert v. Peters*, 55 F.3d 237, 239 (7th Cir. 1995), the court noted that "[d]isciplinary measures imposed on inmates for failing to obey orders also do not violate the *Ex Post Facto* Clause." Diaz's claim is therefore without merit.

### I.  Sufficiency of the Evidence

Diaz alleges in claim nineteen that Lt. Biddle lied when he wrote the conduct report, and that the CAB violated his rights when it relied on that report. In his traverse, Diaz argues that if Lt. Biddle had written things as they really happened, the CAB would never have found Diaz guilty. However, the CAB found Diaz guilty based on more than just Lt. Biddle's report. Officer Marley and Case Manager Robertson provided statements, and the CAB reviewed videotape of the incident. In this case, there was more than the necessary "some evidence" to find Diaz guilty.

11

*J. Denial of an Impartial Appeal*

Diaz alleges in his twentieth claim that both the facility superintendent and the final reviewing authority were biased and partial in denying his appeals based on his race and in retaliation for an alleged threat to contact Washington, D.C. for judicial review of another incident. Regarding his race claim, "[a] plaintiff asserting an equal protection violation must establish that a state actor has treated him differently than persons of a different race and that the state actor did so purposefully." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Diaz's allegations that his appeals were denied due to his race are naked assertions unsupported by any evidence. There is nothing to suggest that the appeals in this case were denied based on anything other than the evidence presented to the CAB.

Similarly, Diaz's allegations that the facility superintendent denied Diaz's appeal in retaliation is without merit. Diaz is required to produce evidence that would establish that his constitutionally protected activity was a "motivating factor" for the superintendent's challenged actions. *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). He has not done so. Diaz's retaliation claim must therefore fail.

## IV.  CONCLUSION

For all the reasons stated, and because none of Diaz's constitutional rights have been violated, this Petition for relief under 28 U.S.C. §2254 is **DENIED**. Petitioner's Motion for an Extraordinary Emergency Enlargement of Time to File Traverse [Doc. 42] is **GRANTED**.

**SO ORDERED.**

ENTERED: March 8, 2006

                                                  s/ Philip P. Simon
                                                  PHILIP P. SIMON, JUDGE
                                                  UNITED STATES DISTRICT COURT